UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:13-CV-01113-TBR

LOWRY R. WATKINS, JR.                                                                              Plaintiff,

v.

TRUST UNDER WILL OF WILLIAM MARSHALL
BULLITT BY AND THROUGH ITS TRUSTEE, PNC
BANK, N.A., AND PNC BANK, N.A.                                                                Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon the Motion to Dismiss of Defendants PNC Bank, N.A. ("PNC") and the Trust Under Will of William Marshall Bullitt By and Through Its Trustee, PNC Bank, N.A. ("the Trust") (collectively, "Defendants"). (Docket No. 15.) Plaintiff Lowry R. Watkins, Jr. has responded, (Docket No. 17), and Defendants have replied, (Docket No. 21). Fully briefed, this matter is ripe for adjudication. For the reasons enumerated below, the Court will GRANT Defendants' Motion.

**Factual Background**

Watkins, a beneficiary of the Trust, alleges that PNC willfully breached its fiduciary duties by failing to pursue certain development opportunities. Specifically, Watkins contends that PNC failed to abide by a November 1963 "Master Plan for Development" of real property held by the Trust known as "Oxmoor Farm." (Docket No. 22-1 at 5.) He further alleges that PNC failed to act when over two decades ago, a developer offered assistance in "zoning, development and deal structuring and brokerage expertise" to expedite certain development. (Docket No. 22-1 at 6.) He points to PNC's failure to proceed with a "Strategic Concept Plan" and a "Preliminary Development Plan," both of which originated in 2002. (Docket No. 22-1 at 6-7.) Finally, Watkins asserts that PNC failed to secure "tax increment financing in order to provide access to the Trust property for development" at an unspecified time. (Docket No. 22-1 at 6.)

1

He asserts five causes of action against Defendants, including breaches of statutory and common law fiduciary duties, gross negligence, unjust enrichment, and a request for accounting. He further seeks an order requiring PNC to deposit all trustee fees into an escrow account until they "can be properly accounted for," removing PNC as trustee, and assessing damages against PNC for its failure to develop the Trust real estate. (Docket No. 22-1 at 10.)

**Legal Standard**

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). That is, a complaint must contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein. *Bassett v. Nat'l Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Stringfield v. Graham,* 212 F. App'x 530, 535 (6th Cir. 2007) (explaining that documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

**Analysis**

In his Complaint and Action for Declaratory Judgment, Watkins raises five counts. (Docket No. 22-1.) The Court will address each in turn, weighing them against the standard articulated above.

I. **Failure to Perform Statutorily Prescribed Fiduciary Duties; Breach of Fiduciary Duties; Gross Negligence**

According to Watkins, the facts set forth above entitle him to damages for PNC's failure to perform its statutory duties by failing to develop the property at issue and by overvaluing the trust assets. (Docket No. 22-1 at 7.) He contends that PNC acted in bad faith by failing to administer the trust with complete loyalty to the beneficiaries, thus breaching its duty of good faith. (Docket No. 22-1 at 8.) Finally, Watkins asserts that the same actions reflect gross negligence in disregard of Watkins' rights as a

3

beneficiary. (Docket No. 22-1 at 8-9.) PNC responds that each of these claims is time-barred. Therefore, the Court will consider this argument as it relates to all three of the aforementioned claims.

PNC contends that Watkins' claims asserting breach of fiduciary duties and gross negligence are based on events that occurred between 1963 and 2002. Given the applicable five-year limitations period, it reasons that Watkins' claims stemming from conduct alleged to have occurred prior to 2008 are untimely. The Court agrees and accordingly finds that the first three counts of Watkins' Complaint must be dismissed.

Kentucky law provides that an action for an injury by a trustee to the rights of a beneficiary must be commenced within five years after the cause of action accrued. Ky. Rev. Stat. § 413.120. A narrow exception to the normal statute of limitations exists for actions against a trustee, exempting from the limitations period "an express trust that is both continuing and subsisting." Ky. Rev. Stat. § 413.340.

In its most recent interpretation of this language, the Kentucky Supreme Court considered the trust beneficiaries' allegation that the trustee mismanaged trust assets, thereby breaching its fiduciary duties. The court held that "an action against a trustee for breach of fiduciary duty where the trust is continuing and subsisting and no repudiation has occurred may be brought *any time* during the existence of the trust . . . ." *First Kentucky Trust Co. v. Christian*, 849 S.W.2d 534, 538 (Ky. 1993) (emphasis added). *First Kentucky* explained that the statute of limitations begins to run only when the trustee repudiates the trust and the beneficiaries have notice of this repudiation. *Id.* at 537 (citing *Bates v. Bates*, 206 S.W. 800, 803 (1918)). And for a trustee's actions to constitute repudiation, they must be unequivocal and in violation of the duties of the trust. *Id.* The court noted that such repudiation typically occurs where the trust is terminated or where the trustee either converts or withholds trust assets. *Id.*

Were *First Kentucky* to apply here, of course, Watkins' action would not be time-barred, as the trust has not terminated and any alleged mismanagement of trust assets does not constitute repudiation. However, *First Kentucky* no longer remains controlling. Five years after the Kentucky Supreme Court

4

issued its decision, the Kentucky General Assembly amended Ky. Rev. Stat. 413.340—an amendment apparently designed to avoid *First Kentucky*'s results.

> The provisions of this chapter shall not apply to an express trust that is both continuing and subsisting, nor to an action by a vendee of real property in possession to obtain a conveyance. *For purposes of this subsection, a subsisting trust is an express trust with respect to which the trustee is acting within its powers and with respect to which no beneficiary has a cause of action against the trustee.*

*Id.* (emphasis added); *see Salmon v. Old Nat'l Bank*, 2010 WL 3069070 (W.D. Ky. Aug. 2, 2010) ("[T]he Court is convinced that the Kentucky Legislature intended, in light of the *First Kentucky* decision, to fix a statute of limitations for claims involving a trustee's alleged mismanagement of trust assets during the continued existence of the trust."). Kentucky law provides that a cause of action "'is deemed to accrue in Kentucky where negligence and damages have both occurred.'" *Queensway Fin. Holdings LTD. V. Cotton & Allen, P.S.C.*, 237 S.W.3d 1441, 147 (Ky. 2007). With the addition of the reference to a "cause of action," the statute is inapplicable to claims for breach of fiduciary duty or negligence, which accrue immediately upon a trustee's improper action. Such claims, therefore, are subject to the five-year statute of limitations provided in Ky. Rev. Stat. 413.120(6). As Judge McKinley opined in reaching the same result in a similar case:

> If the plaintiffs' argument is accepted, this Court would have to conclude that the Legislature intended to impose a time limit for these types of claims, but that it did not intend for it to have any effect until the trust is repudiated or terminated, which might not happen until evidence is lost, memories have faded and witnesses are unavailable. This would simply be directly contrary to the purpose of the limitations period it just enacted. Instead, the Court finds that [the] Legislature's intent is best determined by looking to the language of KRS 413.340 which states the obvious: the limitations period against a trustee does not begin to run until any 'beneficiary has a cause of action against the trustee.'

*Salmon*, 2010 WL 3069070 at *4 (quoting Ky. Rev. Stat. 413.340).

Although Watkins argues that such a conclusion violates Kentucky's prohibition against retroactive application of statutes, the Court cannot agree. The prohibition is not absolute: instead, courts

5

may apply abbreviated statutes of limitations to previously accrued claims, so long as the plaintiff has a "reasonable time" to sue following the statute's amendment. *See, e.g., Smith v. City of Glasgow*, 809 F. Supp. 514, 515 (W.D. Ky. 1992). Watkins' claims stem from conduct that occurred well over the statutory period—indeed, extending as far back to 1963. Watkins certainly had five years after the statute's amendment, which shortened the statute of limitation to five years, to levy such claims. Moreover, statutes of limitations are considered "remedial" and are not subject to Kentucky's prohibition against retroactivity. *See Stone v. Thompson*, 460 S.W.2d 809, 910 (Ky. 1970) (explaining that "enactments prescribing limitations on time relate only to remedy and may be enlarged or restricted as the legislature so desires").

The Court need not toll the statute of limitations based on Watkins' claim of a "continuing violation." (Docket No. 17 at 9.) Under specific circumstances, the continuing violation doctrine provides an exception to the general rule that statutes of limitations are triggered at the time a wrong occurred. *LRL Props. v. Portage Metro Housing Authority*, 55 F.3d 1097, 1005 (6th Cir. 1995). The Court perceives no such circumstances here: there is neither continuing wrongful conduct nor continuous injury to Watkins. *See Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009) (citations omitted). Watkins has complained only about the effects of alleged violations, not about any present-day ongoing violations. Such arguments have been rejected by federal courts; this Court joins others in doing the same. *See, e.g.*, *Ryan v. Conrad*, 2010 WL 1334728 (E.D. Ky. Mar. 30, 2010) ("The defendant's continued failure to act in accordance with the plaintiff's wishes is not a 'fresh act.' Rather, [the building inspector's] inaction after [a refusal] is nothing more than a 'lingering consequence of his prior decisions.'"). Accordingly, the continuing violation doctrine does not save Watkins' claims. Given these conclusions, his arguments fail.

II. **Right to an Accounting**

Watkins further argues that PNC improperly withheld information relating to the Trust assets and administration. (Docket No. 22-1 at 9.) His Complaint points to a September 13, 2013, request for "a complete detailed explanation to Plaintiff for [PNC's] lack of development of Oxmoor Farm by the Trustee since 1961." (Docket No. 22-1 at 3.)

The Court first notes that in reviewing PNC's motion to dismiss this claim, the Court may consider the Complaint along with any document "referred to in the complaint and . . . central to the plaintiff's claim," even if that document is not formally incorporated by reference or attached to the complaint as part of the pleadings. *Gardner v. Quicken Loans, Inc.*, 567 Fed. App'x 362, 364-65 (6th Cir. 2014); *see also* "*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting the motion to dismiss into one for summary judgment."). Accordingly, the Court may consider the letter referenced by Watkins and provided by PNC. (*See* Docket No. 15-6.)

Even a glimpse of the correspondence at issue reveals that it was directed not to PNC, but instead to James Couch of Beargrass Realty. (*See* Docket No. 15-6.) The Court notes that Kentucky law obligates trustees to "keep the beneficiaries of the trust reasonably informed of the trust and its administration," but trustees need not oblige every request of a beneficiary. *See Anderson v. Old. Nat. Bancorp*, 675 F. Supp. 2d 701, 716 (W.D. Ky. 2009); *see* Ky. Rev. Stat. 386.715.

At this preliminary stage of litigation, however, the Court cannot conclude that Watkins' asserted right to an accounting must be dismissed. The Court will not examine the adequacy of the parties' correspondence to this end, but will instead conclude that Watkins has raised factual allegations that "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Taking his allegations as true, it is apparent that Watkins could potentially prove a set of facts in support of his claims that would entitle him to relief. Accordingly, the Court will deny PNC's motion to dismiss this claim.

### III.     Unjust Enrichment

Finally, Watkins contends that PNC overvalued the Trust's assets in an effort to increase the Trust fees. In his telling, PNC haphazardly valued the Trust's real estate at $72 million, then doubled the property's value to $130 million in the following year without actually developing the land. (Docket No. 22-1 at 6.) Watkins alleges that PNC levied excessive fees based on this overvalued land, asserting a claim for unjust enrichment. (Docket No. 22-1 at 9.)[1]

In its Motion to Dismiss, PNC notes that Watkins presents no explanation or support for these figures, nor does he offer the date of the valuations he relies upon. (Docket No. 15-1 at 3.) The Court construes PNC's objection as asserting insufficiency under Federal Rule of Procedure 8(a)(2), which requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."

The Court finds that Watkins' allegations are sufficient to meet the liberal notice pleading requirements of the Federal Rules. A plaintiff need not provide specific facts, but must only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, a court ruling upon a defendant's motion to dismiss must accept as true all of the complaint's factual allegations. *Id.* at 555-56 (citations omitted). In light of these principles, the Court concludes that Watkins has satisfied Rule 8(a)(2) and that dismissal of his claim for unjust enrichment is not warranted.

---

[1] The Bank disclaims Watkins' allegations, pointing to a 2010 appraisal that valued the entirety of Oxmoor Farm at $73 million, with $41,833,333.00 attributable to the Trust. (*See* Docket No. 15-4.) However, as noted above, resolution of this factual dispute is not appropriate at the motion to dismiss stage. Accordingly, the Court will not attempt to resolve or unravel the parties' competing factual accounts.

## CONCLUSION AND ORDER

Therefore, for the reasons enumerated above, Defendants' Motion to Dismiss, (Docket No. 15), will be GRANTED IN PART and DENIED IN PART.

In particular, Watkins' claims asserting Failure to Perform Statutorily Prescribed Fiduciary Duties (Count I), Breach of Fiduciary Duties (Count II), and Gross Negligence Taken in Reckless Disregard of Rights of Watkins (Count III), are DISMISSED.

In all other respects, Defendants' Motion is DENIED. Watkins' remaining claims for Right to an Accounting (Count IV) and Unjust Enrichment (Count V) may therefore proceed.