UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LOWRY R. WATKINS,     Plaintiff,

v.     Civil Action No. 3:13-cv-1113-DJH-CHL

TRUST UNDER WILL OF WILLIAM
MARSHALL BULLITT BY AND
THROUGH ITS TRUSTEE PNC BANK,
N.A., and PNC BANK, N.A.,     Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Lowry Watkins is a beneficiary of the William Marshall Bullitt Trust. (Docket No. 22-1, PageID # 190) Watkins filed suit against the Trust and its Trustee, PNC Bank, N.A., alleging breach of fiduciary duty and unjust enrichment, among other claims. (*Id.*, PageID # 189) The defendants have moved for summary judgment. (D.N. 70) Watkins opposes summary judgment (D.N. 75) and also moves to compel written discovery responses (D.N. 72), to stay a ruling on the defendants' motion for summary judgment (D.N. 87), and for leave to file a second amended complaint. (D.N. 97) After careful consideration, the Court will deny Watkins's motions and grant the defendants' motion for summary judgment.

**I. BACKGROUND**

Many of the facts are undisputed and remain unchanged from the Court's Order issued on March 31, 2017. (D.N. 110) Therefore, the facts will not be repeated here, except to the extent necessary for resolution of the instant motions.

Over the years, Watkins has sent numerous requests to PNC for detailed information about the Trust, including a request for an accounting. (D.N. 70-1, PageID # 524–31 (citing D.N. 70-2; 70-3; 70-4; 70-9; 70-10; 70-11)) For example, in 2006 Watkins inquired about an

1

increase in the value of Oxmoor Farm, which the Trust owns in part. (D.N. 70-1, PageID # 538; D.N. 70-14) In response, the Trustee informed Watkins via email that the entire property had been reappraised for the first time in approximately thirteen years, causing the land value to increase. (D.N. 70-1, PageID # 538; D.N. 70-14, PageID # 602) According to that email, the property had been undervalued "for a number of years." (D.N. 70-14, PageID # 602)

In November 2013, Watkins filed suit against PNC, alleging that PNC had breached its fiduciary duty by failing to develop Oxmoor Farm. (D.N. 1-1, PageID # 3) Watkins asserted five causes of action: "breaches of statutory and common law fiduciary duties by PNC; gross negligence by PNC; a request for accounting from PNC; and a claim that PNC has been unjustly enriched." (D.N. 13, PageID # 88–89 (citing D.N. 1-1, PageID # 5-7)) PNC filed a motion to dismiss (D.N. 15), which was granted in part and denied in part. (D.N. 25) The Court found that Watkins's claims of breach of fiduciary duty for failing to develop Oxmoor Farm were time-barred. (*Id*., PageID # 202–05) The Court's Order left only Watkins's claims for an accounting (Count IV) and unjust enrichment (Count V). (*Id*., PageID # 208)

Watkins then moved for leave to file an amended complaint, seeking to add claims for removal of the trustee and appointment of a special fiduciary to oversee a request for proposals regarding Oxmoor Farm. (D.N. 28) Watkins's amended complaint also sought attorney fees and injunctive relief. (D.N. 28-1, PageID # 221) The Court granted Watkins's motion to amend. (D.N. 29)

On September 16, 2015, the Court dismissed Watkins's claim for removal of the trustee and for attorney fees and costs. (D.N. 54, PageID # 432) The court permitted Watkins's claim for injunctive relief to proceed. (*Id*., PageID # 433) The claim for appointment of a special fiduciary was not at issue. (*Id*., PageID # 424)

Watkins's remaining claims are for an accounting; unjust enrichment; injunctive relief "requiring the Trustee to remedy each breach of trust and perform each duty required"; and for appointment of a special fiduciary. (D.N. 30, PageID # 235; D.N. 54)

On April 26, 2016, Alan Titus, who serves as the Trust's fiduciary officer, wrote a letter to Watkins informing him "of an issue that arose regarding the Trust." (D.N. 73-1, PageID # 911) In that letter, Titus explained that several expenses had been improperly categorized and that the beneficiaries were owed money as a result. (*Id.*, PageID # 911–13) In addition to reimbursing the beneficiaries, the Trustee stated that it would cover the costs associated with filing amended tax returns and penalties for the affected years. (*Id.*)

On May 16, 2016, the Trustee provided Watkins an accounting for the Trust for the period from January 1, 2008 to May 2, 2016. (D.N. 65-1, PageID # 505) In relevant part, the document showed payments to outside counsel, including a payment of $27,762.77 in July 2011 with the note, "L Watkins seeking accounting and damages."

Two months later, on July 12, 2016, Watkins filed a motion to "clarify" paragraph seventeen of his original complaint.[1] (D.N. 69) That paragraph read:

> Despite refusing and neglecting to develop the property which would legitimately increase its value, Trustee arbitrarily valued the Trust Real Estate Property at $72 million dollars, then the next year nearly doubled the value of the same non-developed and wasted Real Estate Property to $130 million dollars in order to wrongfully increase Trust Fees, without actually developing the land or incurring any additional responsibility or performance under the Trust.

(D.N. 1-1, PageID # 9) Watkins sought to amend the paragraph to read:

> Despite refusing and neglecting to develop the property which would legitimately increase its value, Trustee arbitrarily increased its annual fees based on real estate from $72,620.00 in 2004 to $131,680.00 in 2005.

(D.N. 69, PageID # 515) The Court denied this motion. (D.N. 110)

---

[1] The paragraph was incorporated in the amended complaint. (D.N. 30, PageID # 234)

3

PNC has moved for summary judgment on all of Watkins's remaining claims. (D.N. 70) Watkins has filed several motions, including a motion to stay the motion for summary judgment (D.N. 87), a motion to amend the complaint (D.N. 97), and a motion to compel complete answers from 1991. (D.N. 72) The Court will address each motion in turn.

## II. DISCUSSION

### A. Motion to Stay

In his motion to stay, Watkins asks that the defendants' motion for summary judgment be held in abeyance until he receives a transcript of the deposition testimony of Alan Titus, the fiduciary officer of the Trust. (D.N. 87) Watkins's motion to stay focuses solely on the deposition of Titus and does not request transcripts from any other depositions or potential depositions. (*Id.*) However, Watkins changes this request in his reply brief, arguing that "the required depositions needed . . . to respond to the summary judgment motion have not even been scheduled." (*Id.*, PageID # 1552) Further, Watkins states that he "also requires both privilege logs and supplemental responses to discovery." (*Id.*) Because Watkins makes this argument for the first time in his reply brief, the Court will not consider it. *See Bassett v. Tenn. Valley Auth.*, No. 5:09-CV-00039, 2013 WL 665087, at *4 (W.D. Ky. Feb. 22, 2013) (citing *Keys v. Dart Container Corp. of Ky.*, No. 1:08–CV–00138–JHM, 2012 WL 2681461, at *6–7 (W.D. Ky. July 6, 2012); *Shaheen v. Yonts*, 5:06–CV–00173–TBR, 2009 WL 87458, at *11 (W.D. Ky. Jan. 13, 2009)).

And because Watkins attached Titus's deposition transcript to his reply brief and it extensively, his request for a stay pending receipt of that transcript will be denied as moot. (*See* D.N. 87, PageID # 1557–62; D.N. 91)

### B. Motion to Amend

Next, the Court will consider Watkins's motion for leave to file a second amended complaint, in which he seeks to add a number of new facts and claims. (D.N. 97) Watkins argues that there are no deadlines and that leave to amend should be freely given. (*Id.*; *see also* D.N. 104)

The defendants respond that Watkins's proposed second amended complaint means that he has abandoned the claims that are currently before the Court. (D.N. 101, PageID # 1705–07) The defendants also assert that the time for amending pleadings has long passed and that Watkins has not shown excusable neglect. (*Id.*, PageID # 1707–09) Finally, they argue that Watkins's proposed amendment should be denied because the proposed second amended complaint changes the theory underlying his claims and they would be prejudiced by the delay in amending the complaint. (*Id.*, PageID # 1709–13)

Watkins does not reply to the defendants' argument regarding the excusable-neglect standard. He also does not reply to the defendants' prejudice argument.

In its March 31, 2017 Order, the Court denied Watkins's motion to clarify paragraph seventeen of the complaint. (D.N. 110) The Court found "that the deadline for amending pleadings was November 1, 2015." (*Id.*, PageID # 1857) Watkins's motion to clarify (D.N. 69) was untimely because it was filed eight months after the amendment deadline had passed. (*Id.*) Watkins had not shown that his failure to move to amend before the amendment deadline passed was the result of excusable neglect. (*Id.*, PageID # 1858) Moreover, Watkins had not shown good cause to amend the November 1, 2015 amendment deadline. (*Id.*, PageID # 1857–58) In concluding that Watkins had met neither the excusable-neglect nor the good-cause standard, the

Court found that the "danger of prejudice to Defendants in granting leave to amend at this time is high." (*Id.*, PageID # 1859).

Watkins's motion for leave to file a second amended complaint suffers from many of the same flaws the Court discussed in the March 31, 2017 Order. Because he now seeks leave to file a second amended complaint fourteen months after the November 1, 2015 deadline, Watkins must show that his failure to move to amend before the deadline was the result of excusable neglect. Fed. R. Civ. P. 6(b)(1)(B). In determining whether a party has shown excusable neglect for missing a deadline, the Court balances the following factors:

> (1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith.

*Nafziger v. McDermott Int'l Inc.*, 467 F.3d 514, 522 (6th Cir. 2006).

As before, Watkins falls far short of meeting Rule 6(b)'s excusable-neglect standard. Again, he offers no basis for the Court to find excusable neglect. Instead of offering a reason for moving to amend fourteen months after the amendment deadline passed, he argues that there are no deadlines. *See Smith v. Caterpillar, Inc.*, 304 F. App'x 391, 395–96 (6th Cir. 2008) (finding no abuse of discretion in denying motion for leave to amend filed seven months after the amendment deadline); *Coe v. Bell*, 161 F.3d 320, 341–42 (6th Cir. 1998) (same). The Court previously rejected this "no deadlines" interpretation of its scheduling order. (*See* D.N. 110, PageID # 1856) As for whether Watkins acted in good faith in moving for leave to amend this time, the Court previously found persuasive the defendants' argument that Watkins moved to clarify as a stall tactic. (*Id.*, PageID # 1858) That reasoning applies with even greater force at this point, when Watkins has sought leave to file a second amended complaint seven months after the defendants moved for summary judgment and seven months after he moved to hold a

summary judgment decision in abeyance. *See Murphy v. Grenier*, 406 F. App'x 972, 976–77 (6th Cir. 2011) (finding no abuse of discretion in denying motion for leave to amend filed seven months after defendants filed a dispositive motion). This substantial delay was within Watkins's reasonable control. Even more than before, the sheer length of the delay—fourteen months after the deadline passed and nearly three and a half years after Watkins filed suit—weighs strongly in favor of denying leave to amend.

The Court concludes that the danger of unfair prejudice to Defendants is even higher than it was before. *See Leary v. Daeschner*, 349 F.3d 888, 908 (6th Cir. 2003) ("Obviously Daeschner would suffer prejudice if the district court permitted the Plaintiffs to file a second amended complaint which essentially transformed the original due process claims into new claims for breach of the CBA."). As discussed in detail below, the defendants filed a meritorious motion for summary judgment on Watkins's current claims. They should not be required to defend against Watkins's new allegations, which amount to an entirely new lawsuit based on entirely new factual allegations. *See Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (discussing "significant" prejudice to the defendants "in having to reopen discovery and prepare a defense for a claim quite different than the sex-based retaliation claim that was before the court"); *Coe*, 161 F.3d at 341–42 (discussing prejudice to the defendants who would have to "file a large new answer, prepare for another round of discovery, re-write dispositive motions, and prepare for additional evidentiary hearings"). Here, although the parties continue to engage in discovery, the defendants would have to conduct additional discovery to defend against the new allegations and rewrite their dispositive motion based on the new allegations. At this juncture, it would be unfair and inconsistent with the Federal Rules of Civil Procedures to

7

expect them to pivot to defending against entirely new factual allegations. *See Duggins*, 195 F.3d at 834.

The differences between the current allegations and the proposed allegations are substantial. For example, Count V of Watkins's proposed second amended complaint is a claim for a right to an accounting under Kentucky statutory and common law. (D.N. 97-1, PageID # 1659–60) Similarly, Count IV of Watkins's complaint is a claim for an accounting under Kentucky statutory law. (D.N. 22-1, PageID # 196) But the similarities end there. Count IV of Watkins's complaint rests on an allegation regarding "a request made on September 13, 2013 for the Trustee to provide reasons for the lack of development of Oxmoor Farm by the Trustee since 1961 and 'such information was refused.'" (D.N. 22-1, PageID # 192) Although "such information was refused" is in quotation marks in Watkins's complaint, the complaint does not identify the source of the statement.

In contrast, Count V of the proposed second amended complaint takes issue with the Trustee's recent compilation of a 159-page document. (D.N. 97-1, PageID # 1658–61) The Trustee provided that document to Watkins in a letter dated May 16, 2016, and calls it a "fiduciary accounting for the Trust for the period January 1, 2008 to May 2, 2016." (D.N. 119-4, PageID # 2133) The Court will refer to the 159-page document as the "Trustee's Accounting" to differentiate it from the relief Watkins seeks: a court-ordered accounting. The defendants attached the Trustee's Accounting as evidence in support of their motion for summary judgment.[2] (*See* D.N. 70-10)

---

[2] The defendants filed the Trustee Accounting under seal in five parts in support of their motion for summary judgment. In a memorandum opinion and order dated July 19, 2017, the Court ordered the defendants to file redacted versions of that document. (D.N. 114) The redacted versions of the Trustee Accounting are D.N. 119-4, D.N. 119-5, and D.N. 119-6.

Watkins alleges that the Trustee's Accounting is a "first step," but the Trustee's "duty does not end with that document." (D.N. 97-1, PageID # 1659) He says the defendants must also provide the standard for how the Trustee determines which expenses are credited to income beneficiaries as opposed to the principal beneficiaries. (*Id.*) He also alleges that the Trustee's Accounting is deficient because it does not indicate how the Trustee decides between buying growth stocks or income stocks. (*Id.*) Watkins also complains about the Trustee's payments to outside legal counsel totaling $678,869. (*Id.*, PageID # 1660) Ultimately, in the proposed second amended complaint, Watkins says that he "has a right to review Trust procedures and standards as well as Trust expenditures and costs." (*Id.*, PageID # 1661)

Even assuming that Watkins is entitled to the information, Watkins has taken the Trustee's Accounting and used it as the basis for a whole new set of allegations against the defendants, seven months after the defendants moved for summary judgment on the initial allegations. The original complaint alleges that Watkins was refused information when he requested information about the Trust in September 2013. Now, Watkins says that the Trustee's Accounting demonstrates that the defendants owe him even more information about the Trust's administration and that the Trustee could have saved the Trust $2 million if it had used its own staff attorneys rather than outside counsel. Ultimately, the story of the defendants' alleged wrongdoing, as told in the proposed second amended complaint, is substantially different than the one told in the complaint and first amended complaint.

Watkins says that "the second amended complaint restates and incorporates the remaining counts." (D.N. 104, PageID # 1722) He provides no citation for that assertion. Watkins's first amended complaint incorporated the facts and claims from the original complaint. (*See* D.N. 30, PageID # 234) The proposed second amended complaint does *not*

restate or incorporate the previous counts. Altogether, Watkins's motion is an obvious attempt to transform the current claims in an effort to avoid summary judgment. The Court will therefore deny his motion for leave to file a second amended complaint.

### C. Motion for Summary Judgment

Having determined that the basis for a stay no longer exists and that another substantial amendment of the complaint would be improper at this stage, the Court will now turn to the defendants' motion for summary judgment. (D.N. 70) To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and those portions of the record that "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies this burden, the non-moving party must point to specific facts demonstrating a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In considering a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), but "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. The non-moving party must present specific facts demonstrating that a genuine issue of fact exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

### i. Unjust Enrichment

In his complaint, Watkins alleges that PNC "has been unjustly enriched by charging excessive fees to the trust without having performed its duties to earn such fees." (D.N. 1-1, PageID # 12)  Watkins specifically claims that PNC charged "excessive fees based on overvalued land." (*Id.*)  For support, Watkins states that PNC increased the property valuation from $72 million to $130 million in one year in an effort to increase its fees. (*Id.*, PageID # 9)

The defendants argue that they are entitled to summary judgment on this claim because Watkins has admitted that his statements regarding the property valuation were incorrect. (D.N. 70-1, PageID # 536–38)  The defendants also assert that Watkins's claims are barred by the statute of limitations. (*Id.*)

Watkins responds that PNC misinterprets his unjust-enrichment claim. (D.N. 75, PageID # 946)  He argues that this claim is not limited to the property-valuation issue. (*Id.*)  Instead, he asserts, "[t]he claim is based on the fact that PNC received fees so that it could perform its duties . . . and develop the Trust property . . . and PNC did not perform its duties." (*Id.*)  Further, Watkins claims that "every few years [PNC] hired experts to explore development but did nothing." (*Id.*, PageID # 949)  The defendants reply that Watkins is attempting to use his response brief as a complaint by raising unpled claims. (D.N. 80, PageID # 1191–92)

To prove unjust enrichment under Kentucky law, Watkins must show "1) a benefit conferred upon [PNC] at [Watkins's] expense; 2) a resulting appreciation of the benefit by [PNC]; and 3) an inequitable retention of the benefit without payment for its value." *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541, 557 (W.D. Ky. 2005) (citing *Guarantee Elec. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1381 (W.D. Ky. 1987)).

In its March 31, 2017 Order, the Court denied Watkins's motion to clarify paragraph seventeen to allege unjust enrichment based on an arbitrary fee increase. (D.N. 110) Thus, this theory of unjust enrichment is not before the Court. Even if it were, Watkins has acknowledged that the claim was factually inaccurate. (*See* D.N. 69, PageID # 515) Thus, there is no dispute of material fact as to Watkins's original unjust-enrichment claim.

To the extent that Watkins's unjust-enrichment claim relates to the 2006 appraisal, it is time-barred. In Kentucky, unjust-enrichment claims are subject to a five-year limitations period. *Sparacino v. Shepherd Commc'ns, Inc.*, No. 3:14-CV-298-JHM-CHL, 2015 WL 631240, at *6 (W.D. Ky. Feb. 12, 2015) (citing Ky. Rev. Stat. § 413.120; *Thompson v. Ky. Fried Chicken Corp.*, No. 85-0755-L(J), 1993 U.S. Dist. LEXIS 21761, *8, 1993 WL 764505 (W.D. Ky. 1993)). Watkins alleges that PNC's unjust enrichment occurred in 2006. (D.N. 70-1, PageID # 538; D.N. 70-14, PageID # 602) This action was filed in 2013, seven years after the fees were charged. (D.N. 1) As a result, the plaintiff's claim is barred by the statute of limitations. *See* Ky. Rev. Stat. § 413.120.

Watkins's broader unjust-enrichment claim raised in his response to the defendants' motion for summary judgment is similarly unavailing. Watkins states that the Trustee "made errors equal to more than half a million dollars." (D.N. 75, PageID # 943) For support, Watkins cites the April 26, 2016 letter from Alan Titus in which Titus admitted that the Trustee had improperly categorized several expenses and would be reimbursing the beneficiaries for the mistake. (D.N. 73-1) Watkins argues that if these errors arose between 2008 and 2016, "it's safe to assume that numerous errors must exist prior to 2008." (D.N. 75, PageID # 931) It is not necessary to dissect the logic of that self-serving analysis because, as discussed, any claims of

unjust enrichment based on the Trustee's alleged misconduct prior to 2008 are barred by Kentucky's five-year statute of limitations.

Moreover, this claim was not raised in Watkins's complaint, but rather was raised for the first time in his brief responding to the defendants' motion for summary judgment. As such, "the issue is not properly before the court." *Summe v. Kenton Cty. Clerk's Office*, 626 F. Supp. 2d 680, 692 (E.D. Ky. 2009); *see also Henderson v. Chrysler Grp., LLC*, 610 F. App'x 488, 494 (6th Cir. 2015); *Renner v. Ford Motor Co.*, 516 F. App'x 498, 504 (6th Cir. 2013).

Further, in the accounting that the Trustee provided Watkins in May 2016, the only error identified has been rectified. (D.N. 75, PageID # 926) In Part II(B) *supra*, the Court denied Watkins's motion to add claims relating to the Trustee's alleged wrongdoing premised on the April 2016 letter. Both parties acknowledge that the full accounting revealed an error in the categorization of expenses that resulted in PNC reimbursing the beneficiaries. (*Id.*, PageID # 931; D.N. 73-1) However, because PNC corrected the mistake and paid the beneficiaries, Watkins's unjust-enrichment claim on these grounds is moot. *See Skeeters*, 395 F. Supp. 2d at 557 (citing *Guarantee Elec.*, 669 F. Supp. at 1381).

In his response, Watkins also takes issue with the payment of "hundreds of thousands of dollars in legal fees," including $27,000 in one month to outside attorneys, "related to development that has never happened." (D.N. 75, PageID # 947) The accounting provided to Watkins states that outside counsel was paid $27,762.77 with the note "L Watkins seeking accounting and damages." (*Id.*, PageID # 933) Watkins claims that "[t]his entry proves that Mr. Watkins sought information and was denied information . . . . It shows that the Trustee considered Mr. Watkins['s] request to be some sort of a threat in that the Trustee hired an outside law firm and authorized $27,762.77 in legal fees to counter the request." (*Id.*) Watkins also

13

suggests that PNC should have used its own in-house counsel rather than paying over $27,000 to outside counsel. (*Id*., PageID # 933–34) But this claim was also raised for the first time in his response brief and thus "is not properly before the court." *Summe*, 626 F. Supp. 2d at 692. (*See* D.N. 80, PageID # 1188–89)

Even if these claims were before the Court, Watkins's argument is based solely on inferences and assumptions related to one note in the accounting provided to Watkins. (D.N. 75, PageID # 933) Watkins has not presented sufficient facts to support this assertion, and he acknowledges that PNC likely hired outside counsel in response to his request for an accounting. (*Id*.) As Watkins acknowledges, it was reasonable for PNC to consult outside counsel on the matter. (*Id*.) Watkins suggests that he should have a say in when PNC hires outside counsel, but he cites to no legal authority to support this position. (D.N. 80, PageID # 1188) From the record, PNC appears to have acted within its authority to retain outside counsel, and Watkins has not presented any specific facts that demonstrate misconduct. *See* Fed. R. Civ. P. 56(c)(1).

The Court concludes that there is no dispute of material fact with respect to Watkins's unjust-enrichment claim, and the Court will grant summary judgment for PNC on this claim.

### ii. Accounting

Watkins has also requested that the Court conduct an accounting. (D.N. 30, PageID # 237) PNC argues that Watkins's request should be dismissed as moot because the Trustee has provided a formal accounting covering Trust transactions from January 1, 2008 to May 2, 2016. (D.N. 70-1, PageID # 532–33) Watkins takes issue with the Trustee's accounting, detailing a number of alleged problems with PNC's handling of the account. (D.N. 75, PageID # 925–41) Watkins also argues that the Court, not the defendants, must perform the accounting. (*Id*., PageID # 941–43)

Watkins argues that an accounting is needed because of the errors revealed by the accounting dating from 2008 to 2016. (D.N. 75, PageID # 945) "An accounting is an equitable remedy and is . . . defined as an 'adjustment of the accounts of the parties and a rendering of a judgment for the balance ascertained to be due.'" *Gentry v. Coffey*, No. 2006-CA-002293-MR, 2007 WL 4465573, at *1 (Ky. Ct. App. Dec. 21, 2007) (citing *Privett v. Clendenin*, 52 S.W.3d 530, 531 (Ky. 2001); *Conley v. Hall*, 395 S.W.2d 575 (Ky. 1965); 1A C.J.S. *Accounting* § 45 (2005)). An accounting claim is based on a theory of unjust enrichment because an accounting "mandat[es] the return of any benefit received as a result of a breach of fiduciary duty." *Id*. (citing 1A C.J.S. *Accounting* § 6). An accounting is considered "an extraordinary remedy" that "is available only when legal remedies are inadequate." *Bradshaw*, 454 F.2d at 79. Under Kentucky law, "[a]n action for accounting is generally a two-step process: First, the court determines whether the claimant has a right to an accounting; and second, the court orders and conducts an accounting and thereafter renders final judgment pursuant to Ky. R. Civ. P. (CR) 52.01." *Gentry*, 2007 WL 4465573, at *1. (citing 1A C.J.S. *Accounting* § 45 (2005)).

To be entitled to a court-ordered accounting, Watkins must demonstrate that PNC owes him money. *See Gentry v. Coffey*, No. 2006-CA-002293-MR, 2007 WL 4465573, at *1 (Ky. Ct. App. Dec. 21, 2007); *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972); 1A C.J.S. Accounting §§ 34; 54. As discussed in Part II(C)(i), Watkins has failed to provide any evidence that PNC owes him money. Because Watkins's unjust-enrichment claim fails, he cannot demonstrate that he has a right to an accounting. *See id*. Moreover, Watkins received an accounting when PNC sent him the oft-referenced 159-page document detailing the Trust's transactions from January 1, 2008 to May 2, 2016. (D.N. 70-1, PageID # 532–33; D.N. 70-11) Because there is no dispute of material fact with respect to Watkins's unjust-enrichment claim,

which provides the underlying theory for an accounting, Watkins's request for an accounting also fails. *See Gentry*, 2007 WL 4465573, at *1.

### iii. Injunctive Relief

Count VIII of the amended complaint requests that "[o]nce the accounting set forth in Count IV and the unjust enrichment in Count V are adjudicated," PNC repay the fees that it improperly collected to the trust and its beneficiaries. (D.N. 30, PageID # 235) Watkins's request for injunctive relief hinges on the unjust-enrichment claim and request for an accounting being decided in his favor. However, as the Court has already concluded, Watkins failed to provide evidence that PNC owes money to the Trust or to him. Because the Court will grant summary judgment for PNC on both of the underlying claims, Watkins's claim for injunctive relief will be denied as moot.

### iv. Appointment of Special Fiduciary

Watkins demands that a special fiduciary be appointed to administer the request for proposals (RFP) regarding the development of Oxmoor Farm. (D.N. 30, PageID # 236) According to Alan Titus, the Trust's fiduciary officer, "[s]ince issuing the RFP, PNC has actively engaged in evaluating and analyzing the responses to the RFP." (D.N. 70-15, PageID # 606–07) In doing so, PNC determined that development of Oxmoor Farm "is not a practical option until the infrastructure needs for the property are addressed through cooperation with local governmental agencies." (*Id*.) Titus states that the RFP process is now over, and the conclusions have been shared with the beneficiaries of the Trust, including Mr. Watkins. (*Id*.) Titus adds that the Trust is exploring other development opportunities. (*Id*.)

Watkins argues that the defendants spent hundreds of thousands of dollars on the RFP process and have not sufficiently explained to the beneficiaries why the RFP process was

abandoned. (D.N. 75, PageID # 949) Additionally, Watkins contends that the RFP process was mismanaged and the defendants did not provide the beneficiaries with adequate information throughout the process. (*Id.*)

> Under Kentucky law,
>
> [t]he judicial standard of review for a discretionary power is that the trustee shall exercise the power reasonably, in good faith, and in accordance with the terms and purposes of the trust and the interests of the beneficiaries.

Ky. Rev. Stat. § 386B.8-140. At this stage, there is nothing in the record to suggest that the RFP process was conducted unreasonably or in bad faith. Rather, it seems that the defendants considered development proposals in accordance with the terms and purposes of the trust, but concluded that none were practical under the current conditions. (D.N. 70-15, PageID # 606–07) The results of the RFP process were then shared with Watkins and other beneficiaries. (*Id.*) Watkins has not presented any evidence of wrongdoing and thus Watkins's demand that a special fiduciary be appointed to administer the RFP process will be denied.

### D. Motion to Compel

In addition to Watkins's claim for an accounting in his Complaint (D.N. 1-1, PageID # 12), he has also filed a motion to compel that argues PNC must provide an accounting dating back to 1991. (D.N. 72) Though it is styled as a "motion to compel responses to interrogatories to include complete answers and the timeframe November 1991 to the present," Watkins ultimately seeks an accounting that dates back to 1991. (*Id.*) Watkins argues that because errors were found in the accounting provided by PNC, he is entitled to review an accounting of the Trust for earlier years. (*Id.*, PageID # 887) This motion will be denied on the same grounds as Watkins's accounting claim. *See supra* Part II(C)(ii)

### III. CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) The plaintiff's motion to stay the motion for summary judgment (D.N. 87) is **DENIED**.

(2) The plaintiff's motion for leave to file a second amended complaint (D.N. 97) is **DENIED**.

(3) The plaintiff's motion to compel complete answers (D.N. 72) is **DENIED**.

(4) The defendants' motion for summary judgment (D.N. 70) is **GRANTED**. A separate judgment will be entered this date.

(5) All remaining motions are **DENIED** as moot.

August 25, 2017

**David J. Hale, Judge**
**United States District Court**