UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

LOWRY R. WATKINS, JR.,                                                                         Plaintiff,

v.                                       Civil Action No. 3:13-cv-1113-DJH-CHL

TRUST UNDER WILL OF WILLIAM
MARSHALL BULLITT BY AND
THROUGH ITS TRUSTEE PNC BANK,
N.A., and PNC BANK, N.A.,                                Defendants.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Lowry Watkins is a beneficiary of the William Marshall Bullitt Trust. (*See* Docket No. 22-1) Watkins brought this action against the Trust and its Trustee, PNC Bank, N.A., alleging breach of fiduciary duty and unjust enrichment, among other claims. (*Id.*; D.N. 30) On August 28, 2017, the Court granted summary judgment in favor of Defendants on all remaining claims. *See Watkins v. Trust Under Will of William Marshall Bullitt ex rel. PNC Bank, N.A.*, No. 3:13-cv-1113-DJH-CHL, 2017 WL 3710088 (W.D. Ky. Aug. 28, 2017). Watkins moves to alter the judgment pursuant to Federal Rule of Civil Procedure 59(e). (D.N. 124) Defendants move for attorney fees and costs and for leave to respond to Watkins's objections to their Bill of Costs. (D.N. 122; D.N. 128) For the reasons set forth below, the Court will deny Watkins's motion to alter the judgment, grant Defendants leave to respond to Watkins's objections, and refer Defendants' Bill of Costs and motion for attorney fees and costs to Magistrate Judge Colin H. Lindsay for report and recommendation.

### I.     Background

This action centers on a parcel of real property known as Oxmoor Farm, located in Louisville, Kentucky, and owned in part by the Trust. (*See* D.N. 22-1) In November 2013,

Watkins brought this action against the Trust and its Trustee, alleging that they had failed to develop the property and to provide him reasons for the lack of development. (*Id.*) He also claimed that Defendants had arbitrarily overvalued the property to collect more fees from the Trust's beneficiaries. (*Id.*) Based on these alleged actions, Watkins asserted five counts against Defendants in his original complaint: (i) failure to perform statutorily prescribed fiduciary duties, (ii) breach of fiduciary duties, (iii) gross negligence, (iv) right to an accounting, and (v) unjust enrichment. (*Id.*, PageID # 194–96)

In a Memorandum Opinion and Order entered September 22, 2014, the Court dismissed Watkins's claims of failure to perform fiduciary duties, breach of fiduciary duties, and gross negligence, reasoning that the claims were related to development opportunities that occurred well beyond the statute-of-limitations period. *See Watkins v. Trust Under Will of Bullitt ex rel. PNC Bank, N.A.*, No. 3:13–CV–01113–TBR, 2014 WL 4722200, at *3 (W.D. Ky. Sept. 22, 2014). The Court allowed Watkins to proceed with his right-to-an-accounting and unjust-enrichment claims, however. *Id*. In doing so, the Court noted that Watkins's accounting claim stemmed from a September 2013 letter in which he requested information from the Trustee concerning Oxmoor Farm's lack of development. *Id*. at *4. (*See also* D.N. 22-1, PageID # 192) The Court also specified that Watkins's unjust-enrichment claim arose from his allegation that "PNC haphazardly valued [the Farm] at $72 million, then doubled the property's value to $130 million . . . without actually developing the land."[1] *Id*. at *5. (*See also* D.N. 22-1, PageID # 193)

Watkins then moved for leave to file an amended complaint, seeking to add claims for removal of the Trustee and appointment of a special fiduciary to oversee a request for proposals

---

[1] During discovery, it became clear that the alleged $130 million valuation resulted from an appraisal performed in 2006. (*See* D.N. 70-1, PageID # 537)

2

regarding Oxmoor Farm. (*See* D.N. 28) The amended complaint also sought attorney fees and injunctive relief. (D.N. 28-1, PageID # 221) The Court granted Watkins's motion to amend. (D.N. 29) But thereafter, in a Memorandum Opinion and Order entered September 16, 2015, the Court dismissed Watkins's requests for removal of the trustee and attorney fees and costs, finding that the claims had no basis under Kentucky law at the time this action was filed. (*See* D.N. 54, PageID # 427) The Court allowed Watkins to proceed with his request for an appointment of a special fiduciary and claim for injunctive relief, however. (*Id.*, PageID # 432) Meanwhile, the Court entered a modified scheduling order, which set the deadline for amending the parties' pleadings as November 1, 2015. (D.N. 52, PageID # 415)

Nonetheless, in July 2016, eight months after the amendment deadline, Watkins moved to "modify" his original complaint and requested leave to file a second amended complaint. (D.N. 69; D.N. 97) Watkins's proposed claims arose from a letter he received in April 2016 from Alan Titus, who serves as the Trust's fiduciary officer. In the letter, Titus explained that several expenses had been improperly categorized and that the Trust beneficiaries were owed money as a result. (D.N. 73-1, PageID # 911–913) In addition to reimbursing the beneficiaries, the Trustee voluntarily provided Watkins an accounting for the Trust for the period from January 1, 2008 to May 2, 2016. (D.N. 65-1, PageID # 505)

According to Watkins, the mischaracterized expenses indicated that the Trustee had also likely committed accounting errors prior to 2008. Thus, besides moving to amend his complaint, Watkins also filed a motion to compel "information beginning in 1991 regarding [the Trustee's] mismanagement of trust assets." (D.N. 72, PageID # 892) He additionally moved to compel certain privileged documents, which he claimed he needed in order to review the Trustee's characterization of expenses and ascertain whether any further amounts were owed to him. (D.N.

3

108) Meanwhile, Defendants moved for summary judgment on all claims. (D.N. 70) And Watkins moved to stay consideration of the motion for summary judgment, contending that the stay would permit him to complete necessary depositions to confirm the information contained in the Trustee's accounting.[2] (D.N. 87)

On March 31, 2017, the Court denied Watkins's motion to modify his original complaint. (*See* D.N. 110) In doing so, the Court construed the motion to modify as a motion to amend and held that because Watkins had filed the motion well after the deadline for amending the parties' pleadings, the motion was untimely.[3] (*Id.*) Additionally, in a Memorandum Opinion and Order entered August 28, 2017, the Court granted Defendants' motion for summary judgment and denied Watkins's motion to amend, motions to compel discovery, and motion to stay consideration of the motion for summary judgment. *See Watkins*, 2017 WL 3710088. Watkins now moves to alter that judgment pursuant to Rule 59(e). (D.N. 124-1) Defendants move for attorney fees and costs and for leave to respond to Watkins's objections to their Bill of Costs. (D.N. 122; D.N. 128)

## II. Standard

The Court may grant a motion to alter pursuant to Rule 59(e) "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted). The moving party bears the burden of demonstrating the existence of a manifest error of fact or law. *Doe v. Patton*, 381 F. Supp. 2d 595, 605 (E.D. Ky. 2005). A Rule 59(e) motion does not provide the plaintiff another opportunity to reargue the merits of his case, however.

---

[2] Because of the various pending motions, the Court administratively remanded consideration of Defendants' motion for summary judgment on March 13, 2017. (*See* D.N. 103)
[3] The Court also found that Watkins had failed to show good cause or excusable neglect for his untimely request. (D.N. 110, PageID # 1857–59)

*Gencorp, Inc.*, 178 F. 3d at 834. Accordingly, motions to alter or amend judgments "are extraordinary in nature and should be sparingly granted." *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 857 F. Supp. 2d 647, 655 (W.D. Ky. Feb. 13, 2012) (internal quotations omitted).

### III. Discussion

Watkins contends that the Court's August 2017 Opinion "is based on clearly erroneous readings of pleadings and of caselaw and works a manifest injustice . . . as it stops all discovery and ignores valid arguments that go to the heart of this matter." (D.N. 124-1, PageID # 2614) In support of his contention, however, Watkins fails to identify any clear errors of law or persuasively argue that the Court's Opinion results in manifest injustice. Instead, he spends inordinate effort rearguing the merits of his case and presenting arguments that this Court has previously rejected. Watkins has therefore failed to meet his heavy burden to warrant altering the judgment, and the Court will deny his Rule 59(e) motion. *See Gencorp, Inc.*, 178 F. 3d at 834.

**A. Administrative Stay**

On March 13, 2017, the Court administratively remanded Defendants' motion for summary judgment. (D.N. 103) Watkins argues that the Court erred by thereafter granting summary judgment without first notifying him of its intent to lift the administrative stay. (D.N. 124-1, PageID # 2632–33) In support of his argument, Watkins presents no authority indicating that this Court must provide notice prior to lifting an administrative stay. (*See id.*) Watkins has therefore failed to show that the Court *clearly* erred in its decision to rule on the motion for summary judgment without first notifying the parties of its intention to do so. *See Gati v. W. Ky. Univ.*, No. 3:14-cv-544-DJH-CHL, 2018 WL 3028572, at *7 (W.D. Ky. June 18, 2018) ("[The plaintiff's] argument falls short of showing a clear error on the part of the Court . . . . [The plaintiff] cites no caselaw contradicting the Court's position.").

5

Additionally, Watkins fails to demonstrate that the lack of notice resulted in manifest injustice. When the Court ruled on Defendants' summary judgment motion, the motion had been fully briefed for nearly a year. (*See* D.N. 84; D.N. 120) Indeed, Watkins had ample opportunity to present arguments against summary judgment in both his response and surreply to the motion. (D.N. 75; D.N. 81-1) In any event, Watkins does not explain what actions he would have taken had he received notice or how notice would have affected the Court's Judgment. (*See* D.N. 124-1, PageID # 2632–33) Watkins has therefore failed to demonstrate manifest injustice. *See Martin v. Colvin*, No. 15-46-ART, 2016 WL 1305891, at *5 (E.D. Ky. Apr. 1, 2016) ("[A] showing of manifest injustice requires that there exist a fundamental flaw in the court's decision that, without correction, would lead to a result that is both inequitable and not in line with applicable policy." (quoting *Banks v. Pugh*, No. 4:13CV2522, 2014 WL 4441470, at *2 (N.D. Ohio Sept. 9, 2014))).

**B. Declaratory-Judgment Claim**

Watkins also maintains that the Court erred by dismissing this action without discussing his claim for declaratory relief. (D.N. 124-1, PageID # 2639–42) In its August 2017 Opinion, the Court indeed did not mention a claim for declaratory relief. *See Watkins*, 2017 WL 3710088. This is because no declaratory-judgment claim was properly before the Court. In his original complaint, although Watkins explains that "[t]his is an action for Declaratory Judgment pursuant to [the Kentucky Declaratory Judgment Act]," none of his listed counts relate to declaratory relief. (*See* D.N. 22-1, PageID # 189) Indeed, in the prayer section of his original complaint, Watkins does not ask the Court to grant declaratory judgment. (*Id.*, PageID # 197) Similarly, although Watkins states in Count 8 of his amended complaint that "[t]his is an action for Declaratory Judgment" (D.N. 30, PageID # 235), he fails to explain with sufficient detail what controversy requires adjudication. (*See id.*) In light of these omissions, the Court did not err in failing to formally

6

discuss Watkins's supposed declaratory-judgment claim. *See Clark v. National Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975) ("There is no duty on the part of the trial court . . . to create a claim which [the plaintiff] has not spelled out in his pleading." (internal alteration and quotations omitted)); *see generally Bowen v. Taft*, 62 F. App'x 117, 119 (6th Cir. 2003) ("[The plaintiff] argues that the district court failed to address his claims of violations of his property rights and equal protection rights. However, the district court cannot be faulted for failing to address these conclusory allegations, where [the plaintiff] failed to identify any facts establishing a property right or to allege membership in a protected class.").

Additionally, the Court's course of action did not result in manifest injustice, considering Watkins received clear notice that the Court understood that no declaratory-judgment claim was before it. In its September 2014 Opinion, after dismissing most of Watkins's claims, the Court explained that "Watkins'[s] remaining claims for Right to an Accounting (Count IV) and Unjust Enrichment (Count V) may . . . proceed." *Watkins*, 2014 WL 4722200 at *5. The Opinion did not state that Watkins could proceed with a declaratory-judgment claim. *Id*. Indeed, the Court never even discussed that claim. *Id*. And in its September 2015 Opinion, the Court explicitly construed Count 8 of Watkins's amended complaint as merely asserting a claim for injunctive relief; the Court again did not mention a claim for declaratory judgment. (D.N. 54, PageID # 432) Watkins was therefore aware that since 2014, the Court had proceeded under the view that no declaratory-judgment claim was before it. Yet, Watkins never moved to clarify these prior Opinions. Nor did he timely move to amend his complaint to add a declaratory-judgment count. Considering this background, the Court cannot find that its failure to discuss the alleged declaratory-judgment claim resulted in manifest injustice.

In any event, even if Watkins had properly stated a declaratory-judgment claim, the Court would have had no reason to discuss it further, given that no actual controversy remained. Watkins explained in his response to Defendants' summary-judgment motion that his declaratory-judgment claim "seeks removal of PNC as Trustee, disgorgement of fees and damages and an injunction against further waste." (D.N. 75, PageID # 924) Prior to issuing its August 2017 Opinion, the Court had dismissed Watkins's claim concerning removal of the Trustee. (*See* D.N. 54) And in the same Opinion, the Court granted summary judgment on Watkins's disgorgement and injunctive-relief claims. *See Watkins*, 2017 WL 3710088. Thus, there remained no actual controversy that would have supported Watkins's declaratory-judgment claim and a formal analysis of the claim would have added nothing to the Court's Opinion.[4] *See Foley v. Kentucky*, 306 S.W.3d 28, 31 (Ky. 2010) (explaining that a claim under the Kentucky Declaratory Judgment Act "does not involve a question which is merely hypothetical or an answer which is no more than an advisory opinion"); *see also* Ky. Rev. Stat. § 418.040 ("In any action . . . wherein it is made to appear that *an actual controversy exists*, the plaintiff may ask for a declaration of rights." (emphasis added)).

**C. Arguments Related to Watkins's Proposed Second Amended Complaint**

Although presented as separate arguments, Watkins's remaining contentions in favor of his Rule 59(e) motion stem from the same misplaced idea. Specifically, Watkins maintains that his proposed second amended complaint does not assert new claims for relief; it simply asserts more

---

[4] Watkins is also incorrect to assert that Defendants' summary-judgment motion did not address his declaratory-judgment claim. (*See* D.N. 124-1, PageID # 2639) Defendants sought summary judgment on "[t]he surviving claims of the Complaint and Amended Complaint," and explained that they were "entitled to judgment on those claims." (D.N. 70-1, PageID # 540) The "surviving claims" would necessarily include Watkins's supposed declaratory-judgment claim.

8

facts in support of the claims alleged in his original complaint and first amended complaint.[5] (*See* 124-1) Watkins raises this argument despite the fact that this Court has previously rejected it on two occasions. (*See* D.N. 110) *Watkins*, 2017 WL 3710088 at *4 ("The differences between the current allegations and the proposed allegations are substantial."). Because Rule 59 does not provide Watkins another opportunity to reargue the merits of his case, *Gencorp, Inc.*, 178 F. 3d at 834, his remaining arguments are unavailing.

*1. Pleading Standard*

Watkins's first iteration of his amendment argument is that the Court held him to an incorrect pleading standard in denying him leave to file a second amended complaint. (D.N. 124-1, PageID # 2633–38) Essentially, Watkins's argument results from his belief that the primary reason the Court denied his motion to amend was because it found that the allegations contained in his proposed second amended complaint do not relate to those presented in his original complaint. (*Id.*) However, in the August 2017 Opinion, the Court also found that Watkins's motion to amend was untimely, he had failed to show excusable-neglect for the untimeliness, and granting him leave to amend would result in unfair prejudice to Defendants. *Watkins*, 2017 WL 3710088 at *3–*4. Watkins presents no authority indicating that the Court erred in reaching those conclusions. (*See* D.N. 124-1)

In any event, the Court correctly concluded that the allegations in Watkins's proposed second amended complaint do not relate to those presented in his original complaint. Count 1 of Watkins's second amended complaint concerns the "erroneous classifications of [Trust] expenses." (D.N. 97-1, PageID # 1647) Notably, Watkins does not mention any "erroneous

---

[5] Because Watkins's first amended complaint adds no additional factual content (*see* D.N. 30), the Court will hereafter simply refer to Watkins's original complaint and first amended complaint collectively as Watkins's "original complaint."

classification" in his original complaint, which primarily concerns Defendants' alleged failure to develop Oxmoor Farm. (D.N. 22-1; D.N. 30) In fact, the "erroneous classifications" at issue refer to the mischaracterizations of Trust expenses that Watkins became aware of outside the context of this litigation and over two years after he filed this action. (*See* D.N. 73-1) Similarly, Count 4 of Watkins's proposed second amended complaint alleges that the Trustee's failure to keep Watkins informed caused the mischaracterizations. (*Id.*, PageID # 1655–58) Again, the mischaracterizations do not relate to the original impetus for this action—Oxmoor Farm's alleged lack of development. (*See* D.N. 22-1; D.N. 30) And in Count 5 of his proposed second amended complaint, Watkins cites the accounting the Trustee provided to him following its discovery of the mischaracterized expenses to justify a more comprehensive accounting than what he asked for in his original complaint.[6] (D.N. 97-1, PageID # 1658–61)

Based on the substantial differences between Watkins's proposed second amended complaint and original complaint, the Court did not err in finding that "[his] motion [to amend] [was] an obvious attempt to transform the current claims in an effort to avoid summary judgment." *Watkins*, 2017 WL 3710088 at *5.

*2. The Court's Reading of Watkins's First Motion to Compel*

For the second iteration of his amendment argument, Watkins contends that the Court erred by misreading his first motion to compel discovery. (D.N. 124-1, PageID # 2630–32) In its August 2017 Opinion, the Court denied Watkins's motion to compel, reasoning that the discovery at issue was ultimately the relief he sought (i.e., an accounting of the Trust from 1991 to January 2008).

---

[6] Additionally, although Count 2 of Watkins's proposed second amended complaint refers to Oxmoor Farm, Watkins creates a new theory of liability to support his claim. Specifically, Watkins's proposed Count 2 cites an appraisal of the property that occurred in 2016, over two years after Watkins filed this action. (D.N. 97-1, PageID # 1651) Watkins's original unjust-enrichment claim, however, was premised on a 2006 appraisal. (*See* D.N. 22-1)

*See Watkins*, 2017 WL 3710088 at *8. Now, Watkins argues that the Court's interpretation ignored another aspect of the motion: a request for documents to confirm the veracity of the accounting he received from the Trustee. (D.N. 124-1, PageID # 2630–32)

In denying Watkins's first motion to compel, the Court did not discuss his request for documents concerning the veracity of the accounting. *See Watkins*, 2017 WL 3710088 at *8. As explained above, however, there was no need for the Court to do so as Watkins's original allegations do not relate to the accounting or the mischaracterizations that precipitated its completion. (*See* D.N. 22-1; D.N. 30; *see also* D.N. 73-1) Watkins's motion to compel verification documents was therefore an untimely attempt to pursue a new claim. Although it is true, as Watkins contends, that he was entitled to conduct discovery to support his claims, such entitlement does not extend to conducting discovery to prove *new* claims. *See Diamond Elec., Inc. v. Knoebel Constr.*, No. 5:16-023-KKC, 2016 WL 6518625, at *2 (E.D. Ky. Nov. 2, 2016) ("A court may deny leave to file a supplemental pleading where that pleading relates only indirectly, if at all, to the original complaint and the alleged cause of action arose out [of] an entirely unrelated set of facts." (alteration in original) (citation omitted)).[7]

In any event, Watkins's argument relies on the misplaced belief that the Trustee's accounting was essential to the Court's Opinion. (*See* D.N. 124-1, PageID # 2631) The Court granted summary judgment on Watkins's accounting and unjust-enrichment claims because

---

[7] Watkins also cites *Marcus & Millichap Real Estate Inv. Brokerage Co. v. Skeeters*, 395 F. Supp. 2d 541 (W.D. Ky. 2005). According to Watkins, in *Skeeters*, the Court allowed the counterclaimant to use facts uncovered during discovery in support of its broad counterclaim. (*See* D.N. 124-1, PageID # 2637) However, the discovered facts at issue in *Skeeters* were not as distinct and separate from the counterclaimant's allegations as the mischaracterization of Trust expenses and the resulting accounting are from Watkins's original claims here. *See Skeeters*, 395 F. Supp. 2d 541. (*Cf.* D.N. 124-4, PageID # 2662–68) In other words, unlike Watkins, the counterclaimant's use of the discovered facts in *Skeeters* did not "amount to an entirely new lawsuit based on entirely new factual allegations." *Watkins*, 2017 WL 3710088 at *4.

11

Watkins failed to provide any evidence that the Trustee was unjustly enriched.[8] *See Watkins*, 2017 WL 3710088 at *5–*7. Although the Court briefly mentioned the Trustee's accounting, it did so in support of an alternative reason for granting summary judgment. *Id*. at *6–*7. The Court did not rely on the Accounting in support of its principal reason for granting summary judgment on Watkins's accounting and unjust-enrichment claims. *Id*. at *6–*7. Thus, no manifest injustice resulted from the fact that Watkins was unable to confirm the veracity of the accounting.

*3. Genuine Issues of Material Fact*

For the third iteration of his amendment argument, Watkins contends that "[w]ithout rearguing the motion for summary judgment, he ha[d] provided . . . numerous examples of genuine issues of material facts" that warranted denial of Defendants' motion for summary judgment. (D.N. 124-1, PageID # 2642) In support of that contention, however, Watkins proceeds to do precisely what he claims he will not—reargue the motion for summary judgment. (*See id*., PageID # 2642–2647) As noted above, a movant may not use a Rule 59(e) motion to simply reargue his case. *Whitehead*, 301 F. App'x at 489. For that reason alone, Watkins's argument does not call for reconsideration of the Court's Judgment.

Regardless, although Watkins identifies several "issues" of material fact, these issues relate only to claims asserted in his proposed second amended complaint. (*See* D.N. 124-1) For the

---

[8] Watkins is incorrect that the Court misread *Gentry v. Coffey*, No. 2006-CA-00293-MR, 2007 WL 4465573 (Ky. Ct. App. Dec. 21, 2007), in reaching that conclusion. The Court cited *Gentry* for the notion that "[t]o be entitled to a court-ordered accounting, Watkins must demonstrate that PNC owes him money." *Watkins*, 2017 WL 3710088 at *7. Despite Watkins's protests, *Gentry* indeed states that the underlying theory of an accounting is "unjust enrichment" and that a claimant must show he "has a right to an accounting." *Gentry*, 2007 WL 4465573 at *1. Having found that Watkins's unjust-enrichment claim failed, the Court correctly concluded that he had no right to an accounting. *Watkins*, 2017 WL 3710088 at *5–*7; *see also* 1A C.J.S. Accounting § 34 ("An accounting will not, as a general rule, be ordered where there is no balance due to the plaintiff from the defendant, since to do so would avail the plaintiff nothing.").

reasons set forth above, those claims were not properly before the Court and thus Watkins was not entitled to discovery on any issues related to the claims. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and proportional to the needs of the case." (emphasis added)).

*4. Watkins's Final Objections*

Watkins's final iterations of his amendment argument are meritless. First, Watkins contends that the Court misread his motion to stay consideration of Defendants' motion for summary judgment. (D.N. 124-1, PageID # 2622; *see also* D.N. 87) According to Watkins, the motion to stay related to certain deposition testimony he sought to conduct to confirm the veracity of the Trustee's accounting. (*Id.*) He claims that the Court misconstrued the motion by stating that it "focuse[d] solely on the deposition of Titus and [did] not request transcripts from any other depositions or potential depositions." *Watkins*, 2017 WL 3710088 at *2. (D.N. 124-1, PageID # 2623) Yet even if the Court read Watkins's motion too narrowly, the issue would be immaterial. As explained above, the Trustee's accounting does not relate to any claim asserted in Watkins's original complaint. (*See* D.N. 22-1, D.N. 30) Depositions related to the accounting's veracity were therefore irrelevant as to the resolution of Defendants' then-pending motion for summary judgment, and the Court was justified in denying Watkins's motion to stay.

Second, Watkins claims that "[i]t is certainly a manifest injustice to stop discovery without notice and grant a premature summary judgment because of too little facts." (D.N. 124-1, PageID # 2625) Essentially, Watkins rephrases his argument that this Court granted summary judgment when issues of fact were still outstanding. However, the issues of fact that Watkins proceeds to identify relate to the accounting, the mischaracterized expenses that led to its creation, and the

13

2016 appraisal of Oxmoor Farm. (*See* D.N. 124-1, PageID # 2625) Again, claims related to those items were not properly before the Court.[9]

Third, Watkins maintains that the Court ignored his second motion to compel, which sought privileged documents pertaining to the Trustee's mischaracterizations of Trust expenses and the 2016 appraisal of Oxmoor Farm. (*See* D.N. 108) As noted above, however, claims concerning those issues were not properly before the Court as they do not relate to any claim asserted in Watkins's original complaint. (*See* D.N. 22-1; D.N. 30) In any event, the Court did not "ignore" Watkins's second motion to compel. In its August 2017 Opinion, the Court denied "[a]ll remaining motions" as moot. *Watkins*, 2017 WL 3710088 at *9. The "remaining motions" would necessarily include Watkins's pending motion to compel.

Finally, Watkins broadly argues that the Court's August 2017 Opinion results in manifest injustice. (D.N. 124-1, PageID # 2647–50) In support of his contention, however, Watkins simply parrots an argument that this Court has rejected twice—that he should be entitled to pursue untimely claims because he mistakenly believed the deadline for submitting amended pleadings had been remanded. (D.N. 124-1, PageID # 2648–50) In May 2016, the Court vacated the expert deadlines in this matter and explained that "[a]ll *remaining* pretrial deadlines [are] stayed." (D.N. 66 (emphasis added)) Because the deadline for amending the parties' pleadings had already expired on November 1, 2015, it was not a "remaining" deadline as of May 2016. (*See* D.N. 52) Thus, any attempt by Watkins to amend his complaint after November 2015 was untimely, and he had to show good cause or excusable neglect to justify the untimeliness. *Watkins*, 2017 WL

---

[9] On this point, Watkins's reliance on *CenTra, Inc. v. Estrin*, 538 F.3d 402 (6th Cir. 2008), is unavailing. In *CenTra*, the court found that "it is generally an abuse of discretion to deny a Rule 56(f) motion in the absence of *any* opportunity for discovery." *Id*. at 420–21. Unlike Watkins, however, the plaintiff in *CenTra* was not in the middle of discovery when it filed its Rule 56(f) motion; rather, the parties had conducted no discovery. *Id*. at 421.

3710088 at *4. Watkins presents no authority to indicate that the Court erred in that reading of its own scheduling order. Watkins's final ground for reconsideration is therefore unavailing.

In sum, a Rule 59 motion does not provide a movant the opportunity to simply rehash failed arguments. *Watts*, 23 F. Supp. 3d at 815. If Watkins wishes to present arguments that this Court has consistently rejected, there is a higher court to which he may appeal. *See* Fed. R. App. P. 3. Because Watkins presents no support to indicate that the Court clearly erred or that its August 2017 Opinion results in manifest injustice, Watkins fails to meet his heavy burden under Rule 59. *Patton*, 381 F. Supp. 2d at 605. The Court with therefore deny his Rule 59 motion.

**E. Attorney Fees and Costs**

Following the Court's August 2017 Opinion, Defendants moved for attorney fees and costs pursuant to Ky. Rev. Stat. § 386B.10-040. (D.N. 122) Defendants also filed a Bill of Costs pursuant to Rule 54(d). (D.N. 123) Thereafter, Watkins filed a "response" to the Bill of Costs, which the Court will construe as an objection. (*See* D.N. 125) Defendants now move for leave to file a response to Watkins's objection. (D.N. 128) Watkins states that he does not oppose the response "on the condition that [he] is allowed [to file] a reply two weeks after Defendant[s] file[] [their] response." (D.N. 131) In light of Watkins's concession, the Court will grant Defendants leave to file a response to Watkins's objections. The Court will also allow Watkins to file a reply. Finally, considering the issues raised by Defendants' request for attorney fees and costs, the Court will refer Defendants' motion for attorney fees and costs and Watkins's objections to the Bill of Costs to the magistrate judge assigned to this action.

**IV. Conclusion**

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Watkins's motion to alter or amend the Judgment (D.N. 124) is **DENIED**.

(2) Defendants' motion for leave to respond to Watkins's objections to the Bill of Costs (D.N. 128) is **GRANTED**. Defendants shall have **twenty-one (21) days** from the date of entry of this Order within which to file their response. The response shall not exceed fifteen (15) pages. Watkins shall have **fourteen (14) days** thereafter to file his reply. The reply shall not exceed ten (10) pages.

(3) Defendants' motion for attorney fees and costs (D.N. 122) and Watkins's objections to the Bill of Costs (D.N. 125) are **REFERRED** to Magistrate Judge Colin H. Lindsay for a report and recommendation.

(4) Defendants' motion for attorney fees and costs (D.N. 122) is **STAYED** and **ADMINISTRATIVELY REMANDED** pending further order of the Court.